IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED
2020 MAR 24 A 11: 19
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| THOMAS WILSON, | ) |
| Plaintiff, | ) CASE NO. 2:20-CV-214-RAH-WC |
| v. | ) JURY TRIAL REQUESTED |
| EBSCO SIGN GROUP, L.L.C., | ) |
| Defendant. | ) |

## COMPLAINT

**COMES NOW** the Plaintiff, Thomas Wilson, by and through his undersigned counsel of record, and hereby doth complain and aver against the above-named Defendant, as set forth herein-below.

### I. JURISDICTION & VENUE

1. Plaintiff Wilson files this Complaint, institutes these proceedings, and invokes the jurisdiction of this Court under and by virtue of 28 U.S.C. §§ 1331 and 1334 (a)(4), as an action arising under the Act of Congress known as Title VII of the Civil Rights Act of 1964, (42 U.S.C. § 2000(e) et seq.), as amended by the 1991 Civil Rights Act; 42 U.S.C. § 1981(a); and 42 U.S.C. § 1201, et seq., to obtain equitable relief, the costs of suit, including reasonable attorneys' fees, and damages suffered by the Plaintiff, due to the Defendant's discrimination against Plaintiff.

2. Plaintiff Wilson filed a charge of race discrimination with the EEOC in Birmingham, Alabama. Plaintiff received a right-to-sue on December 24, 2019,

giving Plaintiff the right to pursue this claim in federal Court for 90 days after said receipt. (Exhibit A).

3. Venue is proper in the Northern Division of the Middle District of Alabama since the alleged discriminating action of Defendant occurred in Chilton County, Alabama.

## II. PARTIES

4. The named Plaintiff, Thomas Wilson (hereinafter "Plaintiff" or "Mr. Wilson"), is a citizen of the United States and a resident of Calera, Alabama. Plaintiff is over the age of nineteen years.

5. The Defendant, EBSCO Sign Group (hereinafter "Defendant" or "EBSCO"), is a business entity located in Clanton, Alabama. At all times relevant to this Complaint, Plaintiff was employed, and is no longer employed, by Defendant.

## III. STATEMENT OF FACTS

6. Mr. Wilson is an African-American male.

7. Mr. Wilson began working with EBSCO Sign Group in Quality Control in September 2018. In December 2018, Mr. Wilson was unjustly terminated. Prior to working for EBSCO, Mr. Wilson was employed full-time with another company in the area, but Mr. Wilson gave up that job to come to EBSCO. Mr. Wilson performed his duties satisfactorily and adequately, even without all the necessary resources to do so.

8. At the time Mr. Wilson was employed with EBSCO, that company had approximately 50 employees, of whom only four were African-American, of which three were female. Mr. Wilson was the only African-American male out of

the approximately 46 men. There was one other person of color, a man who did not consider himself an African-American.

9. During Mr. Wilson's employment with EBSCO, he was subjected to racially motivated behavior that made for a pervasive cold and hostile working environment. Mr. Wilson complained to both Aerotek, the temporary agency that placed Mr. Wilson with EBSCO, and to the management of EBSCO, but all to no avail. Further, Mr. Wilson received no disciplinary actions.

10. Even after being notified of the racially motivated behaviors, creating a pervasively cold, hostile, and unwelcoming environment for Plaintiff, the Defendant EBSCO failed to rectify the same.

11. As a Quality Control employee, Mr. Wilson was the only African-American person in this position. The other Quality Control employees were Caucasian. Yet, Mr. Wilson was the single Quality Control employee denied resources to perform his job correctly. Meanwhile, his white co-workers received all the resources and support they needed.

12. During his employment, Mr. Wilson was subjected to racial discrimination and a hostile work environment. As a Quality Control person, Mr. Wilson was authorized to check the work of assemblers in the production area. Unfortunately, many times, when Mr. Wilson gave corrections, the white employees would not listen. The white employees would tell Mr. Wilson they preferred to have Jason, the other quality control employee, who was white, to check their work. Often, the white employees would discount Plaintiff's statements, and deferred to Jason.

13. As a Quality Control employee, Plaintiff was also not given space or area to work in, as were his white counterparts. Often Mr. Wilson had to stand outside the Quality Control area or wait in another department until called to check an assembler's work. Mr. Wilson was never given passwords to the computer to do his job properly. In one instance, Ms. Wilson needed to program a sign for a customer; however, Mr. Wilson could not perform this task because EBSCO would not grant him access to the software, thus preventing Mr. Wilson from doing his job. This happened on multiple occasions, November 7, 8, and 13, 2018, to name a few.

14. Mr. Wilson's white colleagues would make inappropriate comments about the friendships with the African-American female employees. One male employee asked Mr. Wilson if he slept with one of the women.

15. When Mr. Wilson first started working at EBSCO, he was told by a senior employee that "It won't be hard to tell who's racist." For example, Jason, the white male quality control person, did not want to work with Mr. Wilson.

16. Plaintiff Wilson was informed by Defendant that he was terminated due to missing six days of work. While Plaintiff Wilson admits he was tardy some days, he maintains that he was only absent for two days. Further, each time Mr. Wilson was tardy, he provided proper and reasonable justifications for his tardiness. Mr. Wilson even provided his supervisor with justifiable pictures showing why he was late. Meanwhile, Plaintiff's white counterparts missed several days, and yet, none were terminated.

17. On one occasion, Plaintiff Wilson admittedly used the word "damn" in the presence of a co-worker, but he wasn't directing the word as a descriptive adjective towards the co-worker. Yet, that co-worker told management that Mr. Wilson cursed him. This co-worker, however, was known for using foul and profane language all around the place regularly, including the "F"-word.

18. On many occasions, Mr. Wilson's white counterparts used extremely foul language in their everyday interactions with co-workers and were never reprimanded for doing so.

19. One co-worker would ask Mr. Wilson about sexual relationships with two female colleagues. That same colleague even went so far as to ask Mr. Wilson about "eating the booty" of a female colleague when there was a discussion about what each colleague had for lunch.

20. The same "booty eating" co-worker would also joke with a supervisor about another colleague "pleasuring" himself at a park full of kids, and that is how the colleague met his wife. Yet this co-worker received no reprimands for his language.

21. Mr. Wilson also observed race discrimination by the Defendant against other African-American employees.

22. Based on the foregoing, Plaintiff Wilson claims he was subjected to illegal race discrimination, in violation of Title VII, 42 U.S.C. § 2000(e) and 42 U.S.C. § 1981(a). As a result, Mr. Wilson lost valuable income and benefits. Mr. Wilson

also suffered mental and emotional distress and incurred the cost of an attorney's fee.

## IV. PLAINTIFF'S CAUSES OF ACTION

### a. RACE DISCRIMINATION IN VIOLATION OF TITLE VII

23. Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 19 above, the same as if more fully set forth herein, and further avers that the Defendant's actions towards him violated his right to be free of race discrimination in employment, in violation of Title VII of the Civil Rights Act of 1964, as amended, (42 U.S.C. § 2000(e), et seq.), and 42 U.S.C. 1981(a).

24. As a proximate cause of Defendant's afore-described actions in discriminating against Plaintiff, due to his race, Plaintiff was injured and damaged, as set forth in paragraphs 1 through 19 above. In addition, Plaintiff has suffered considerable mental and emotional anguish.

### PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff Wilson respectfully prays that this Court grant the following relief:

a) Judgment declaring that the Defendant discriminated against Plaintiff, on the basis of Plaintiff's race;

b) An order granting Plaintiff compensation for rights to which Plaintiff would have been entitled had Plaintiff not been the victim of race discrimination, effective from the date of final judgment;

c) An award of compensatory damages, including for mental anguish, to which Plaintiff may be entitled;

    d)    An award of punitive damages, due to the egregious nature of the race discrimination practiced against Plaintiff, so openly tolerated, ratified and acquiesced in by the Defendant;

    e)    An award of all court costs and reasonable attorneys' fees, including those incurred for seeking administrative relief; and

    f)    Such further, other, and different relief as the Court may deem appropriate and necessary.

### b. RACE DISCRIMINATION IN VIOLATION OF IN VIOLATION OF 42 USC SECTION 1981 AND 1981(A)

25. Plaintiff repeats, realleges and incorporates by reference paragraphs 1 - 19 above, the same as if more fully set forth herein, and further avers that the Defendant's actions towards him violated his right to be free of a race-based cold and hostile working environment in employment, in violation of 42 U.S.C. §§1981 and 1981(a).

26. As specifics for the race-based cold and hostile work environment that Plaintiff suffered, Plaintiff cites the facts set forth, particularly in the statement of facts above, paragraphs 1 - 19 above.

### PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully prays that this Court grant the following relief:

    a)    A judgment declaring that the Plaintiff was subjected to an egregious race-based hostile work environment;

    b)    An award of compensatory damages, including for mental anguish, to which Plaintiff may be entitled;

    c)    An award of punitive damages due to the egregiousness of Defendant's wrongdoing;

    d)    An award of all court costs and reasonable attorneys' fees, including those incurred for seeking administrative relief;

    e)    Such further, other, and different relief as the Court may deem appropriate and necessary.

### c. RACE-BASED COLD AND HOSTILE WORKING ENVIRONMENT IN VIOLATION OF TITLE VII

27. Plaintiff repeats, realleges and incorporates by reference paragraphs 1 - 19 above, the same as if more fully set forth herein, and further avers that the Defendant's actions towards him violated his right to be free of a race-based cold and hostile working environment in employment, in violation of Title VII of the Civil Rights Act of 1964, as amended, (42 U.S.C. §2000(e), et seq.), as amended by the 1991 Civil Rights Act.

28. As specifics for the race-based cold and hostile work environment that Plaintiff suffered, Plaintiff cites the facts set forth, particularly in the statement of facts above, paragraphs 1 - 19 above.

### PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully prays that this Court grant the following relief:

    a)    A judgment declaring that the Plaintiff was subjected to an egregious race-based hostile work environment;

    b)    An award of compensatory damages, including for mental anguish, to which Plaintiff may be entitled;

c) An award of punitive damages due to the egregiousness of Defendant's wrongdoing;

d) An award of all court costs and reasonable attorneys' fees, including those incurred for seeking administrative relief;

e) Such further, other, and different relief as the Court may deem appropriate and necessary.

## VI. JURY DEMAND

Plaintiff hereby requests trial by jury on all issues so triable.

Respectfully submitted this 24th day of march, 2020

Thomas Wilson, Plaintiff, Pro se

*(signature)*

**PRO SE:**
Mr. Thomas Wilson
100 Merimeadows Drive
Calera, AL 35040
T: (205) 230-8910
twilson198460@gmail.com